**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**EDWARD G. MCDONOUGH,**

                                        **Plaintiff,**

        **vs.**                                                    **1:15-cv-01505**
                                                                   **(MAD/DJS)**

**YOUEL C. SMITH, III, individually and as Special District**
**Attorney for the County of Rensselaer, New York a/k/a TREY**
**SMITH; KEVIN B. MCGRATH; WILLIAM A.**
**MCINERNEY; JOHN J. OGDEN; ANTHONY J. RENNA;**
**THE COUNTY OF RENSSELAER, NEW YORK,**

                                        **Defendants.**

_____

**APPEARANCES:**                              **OF COUNSEL:**

**PREMO LAW FIRM**                            **BRIAN D. PREMO, ESQ.**
20 Corporate Woods Boulevard
Albany, New York 12211
Attorneys for Plaintiff

**NAPIERSKI, VANDENBURGH LAW FIRM**           **THOMAS J. O'CONNOR, ESQ.**
296 Washington Avenue Extension              **DIANE LUFKIN SCHILLING, ESQ.**
Albany, New York 12203
Attorneys for Defendant Smith

**ANDERSON, MOSCHETTI LAW FIRM**             **PETER J. MOSCHETTI, JR., ESQ.**
26 Century Hill Drive
Suite 206
Latham, New York 12110
Attorneys for Defendant McGrath

**OFFICE OF JAMES E. LONG**                   **JAMES E. LONG, ESQ.**
668 Central Avenue
Albany, New York 12206
Attorneys for Defendant McInerney

**ATTORNEY GENERAL OFFICE - ALBANY**         **WILLIAM A. SCOTT, AAG.**
The Capitol
Albany, New York 12224
Attorneys for Defendant Ogden

**ANTHONY J. RENNA**

102 Sherman Avenue
Troy, New York 12180
Defendant, *pro se*

**BAILEY, KELLEHER LAW FIRM**       **JOHN W. BAILEY, ESQ.**
5 Pine West Plaza
Suite 507
Washington Avenue Extension
Albany, New York 12205
Attorneys for Defendant County of Rensselaer

**RENSSELAER COUNTY ATTORNEY**       **STEPHEN A. PECHENIK, ESQ.**
1600 Seventh Avenue
Troy, New York 12180
Attorneys for Defendant County of Rensselaer

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Plaintiff Edward G. McDonough ("Plaintiff") commenced this action by filing a 174 page, 1220 paragraph complaint on December 18, 2015, asserting three causes of action pursuant to 42 U.S.C. § 1983 ("Section 1983") against eleven named Defendants. *See* Dkt. No. 1. In a Memorandum-Decision and Order dated September 30, 2016 (the "Prior Decision"), this Court dismissed Plaintiff's claims against Defendants O'Malley, Robillard, McNally, and John and Daniel Brown. *See* Dkt. No. 114. The Court dismissed all of Plaintiff's claims against Defendant McInerney except for Plaintiff's Section 1983 conspiracy to commit malicious prosecution claim. *See id.* at 51.

Before the Court dismissed Plaintiff's claims against Defendants John and Daniel Brown, those Defendants moved for sanctions against Plaintiff and his attorney pursuant to Federal Rule of Civil Procedure 11(c). *See* Dkt. No. 89. Plaintiff then cross-moved for sanctions against Defendants John and Daniel Brown and their attorney. *See* Dkt. No. 90.

Currently before the Court are three motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), filed separately by Defendants Smith, Ogden, and the County of Rensselaer (the "County"). *See* Dkt. Nos. 73, 96, 97. Also before the Court are Defendants John and Daniel Brown's motion for sanctions and Plaintiff's cross-motion for sanctions. *See* Dkt. Nos. 89, 90.

## II. BACKGROUND[1]

The Court refers the parties to the Prior Decision, which extensively sets forth the factual background and allegations in Plaintiff's complaint. *See* Dkt. No. 114. Accordingly, the Court will provide a brief recitation of the facts and discuss only those allegations that are relevant to disposition of the pending motions.

Defendant Youel C. Smith III, also known as Trey Smith ("Defendant Smith"), was appointed special district attorney of Rensselaer County to prosecute alleged absentee ballot forgeries in the 2009 Troy City elections. *See* Dkt. No. 1 ¶¶ 24-25. Defendant John J. Ogden ("Defendant Ogden") is employed by the New York State Police ("NYSP") and was assigned to assist Defendant Smith in investigating the forgery scheme. *See id.* ¶ 323.

The general allegations in this case surround an alleged scheme to forge and submit false applications for absentee ballots ("AAB") and then file the subsequently forged absentee ballots ("AB"). An AAB is a simple, single-page document that must be signed and completed by the voter or his agent before it can be filed with the Board of Elections. *See id.* ¶ 101. Once an AAB is completed, signed, and filed, an AB and an AB envelope are mailed to the voter or to the voter's AB agent, if one is designated. *Id.* ¶ 102. The AABs require the voter to list a reason for why he or she is eligible to vote absentee ("excuses"). *See id.* ¶ 2.

---

[1] The following factual background is taken from Plaintiff's complaint. Any statements contained herein are treated merely as allegations and not as statements of fact.

In the summer of 2009, Defendant Kevin McGrath announced that he was running to take Democratic control of the Working Family Party line for the City of Troy elections. *Id.* ¶ 51. Defendant McGrath and other democratic operatives, including Defendants William McInerney, John Brown, and Daniel Brown, had voters sign AABs without completing the remainder of the form, and then these Defendants completed the AABs with false AB names and excuses, filed them, and obtained the AB for those voters. *See id.* ¶¶ 51-56, 81-88. After receiving the ABs, these Defendants falsely voted with the ABs in forged AB envelopes. *See id.* ¶¶ 56, 80.

Around September of 2009, the forgery scheme was discovered and an action was commenced to invalidate the forged ABs. *See id.* ¶¶ 161-65, 180. Shortly thereafter, Defendant Richard J. McNally, who was employed as the district attorney of Rensselaer County, disqualified his office from investigating or prosecuting any case related to the AB forgery, and Defendant Smith was appointed as special prosecutor for any further criminal action related to the 2009 AB forgery scheme. *See id.* ¶¶ 27, 229. Plaintiff alleges that Defendant Smith had ample evidence to prosecute other democratic operatives for the 2009 AB forgery scheme, but instead actively conspired to initiate a scapegoat prosecution against Plaintiff in order to shift the negative attention and criminal charges away from the other Defendants. *See id.* ¶¶ 343-45.

As outlined in the Prior Decision, the alleged inadequacies of Defendant Smith's investigation into the other Defendants for the AB forgery include the following: (1) the photograph shown to voters to identify Defendant McInerney was a twenty-year-old photograph, which did not accurately reflect his current appearance; (2) photographs of Defendants John Brown, Daniel Brown, and other democratic operatives were not shown to voters; (3) several key democratic party operatives, including Defendant Renna and Robert Martiniano, were not interviewed for the investigation; (4) certain witnesses were not specifically asked questions

about Defendant McInerney's involvement in the AB forgery; (5) the forged AB documents purportedly signed by Defendant McInerney were not examined by a handwriting expert; (6) when presented with significant evidence that Defendant McInerney had participated in AB fraud in the 2007 and 2008 elections, Defendant Smith stated that he did not have authority to prosecute those actions. *See id.* ¶¶ 364-380, 400, 487, 492-500. Moreover, from 2009 through 2011, Defendant Smith told officials in the NYSP that Defendants McInerney and John Brown could not be prosecuted because the evidence against them "was not legally sufficient to corroborate the testimony of DeFiglio or any accomplice or co-conspirator . . . ." *Id.* ¶ 573.

In September of 2010, Defendant Smith commenced a grand jury proceeding against Plaintiff. *Id.* ¶ 708. Plaintiff alleges that Defendant Smith conspired with several Defendants to present false testimony that implicated Plaintiff instead of the democratic operatives who were actually guilty. *See id.* ¶¶ 740-43, 758-62. Moreover, Defendant Smith prepared and notarized the affidavits of those individuals who did not testify. *Id.* ¶ 815. At trial, two of those voters testified that the signature on their purported affidavit was not genuine. *Id.* ¶ 816; *see also* Dkt. No. 1-1 at 26-30.

On January 28, 2011, Plaintiff was charged by indictment with 38 counts of felony forgery in the second degree and 36 counts of felony criminal possession of a forged instrument in the second degree. *See* Dkt. No. 1 ¶ 809. In April of 2011, Plaintiff contacted the U.S. attorney's office and requested an FBI investigation into his allegedly unlawful prosecution. *See id.* ¶ 929. Between May 25 and August 4, 2011, the NYSP conducted an independent investigation into this matter. *See id.* ¶ 944. That investigation gathered sufficient evidence against Defendant McInerney for the forgery of approximately 50 of the AABs that appeared to be forged in his handwriting. *See id.* ¶ 947. Defendant McInerney was subsequently arrested for the AB forgeries

that occurred in 2007 and 2008. *See id.* ¶ 993. Defendant McInerney also pled guilty to one felony count and was sentenced to a 90 day work order in satisfaction of all charges relating to his involvement in the 2009 AB forgery scheme. *See id.* ¶ 971. Plaintiff was ultimately acquitted on December 21, 2012. *See id.* ¶¶ 1199-1200.

Plaintiff alleges that Defendants Smith and Ogden maliciously prosecuted him and also engaged in a conspiracy with other Defendants to effectuate Plaintiff's malicious prosecution. Plaintiff further alleges that the County should also be held liable for Defendants Smith's and McNally's actions. Defendants Smith, Ogden, and the County have moved to dismiss the complaint.

## III. DISCUSSION

### A.    Standard of Review

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111–12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting [*Twombly*, 550 U.S.] at 557, 127 S. Ct. 1955). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed[,]" *id.* at 570.

## B.    General Arguments

While the three Defendants each separately moved to dismiss the complaint on numerous grounds, several of the arguments are not specific to any individual Defendant. As such, the Court will address those arguments before addressing any Defendant-specific arguments.

### 1. Rule 8

Each Defendant claims that Plaintiff's 174 page, 1220 paragraph complaint violates the requirement in Fed. R. Civ. P. 8 that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court addressed this argument in the Prior Decision and found that, while Plaintiff's complaint is undoubtedly a voluminous pleading, it spans almost a four-year period and implicates eleven Defendants and

numerous other individuals.  Moreover, each Defendant who has responded has been able to understand Plaintiff's allegations enough to present colorable arguments and defenses in opposition.  As such, Plaintiff's complaint complies with Rule 8, and Defendants Smith's, Ogden's, and the County's motions to dismiss are denied on this ground.  However, it should be noted that the length of Plaintiff's complaint, coupled with the lack of coherent, organized claims, has made analysis of these motions difficult.

### 2. Statute of Limitations

In the Prior Decision, the Court held that Count I of Plaintiff's complaint alleging a Section 1983 fabrication of evidence claim is barred by the statute of limitations.  *See* Dkt. No. 114 at 26.  As such, the Court dismissed that claim against all Defendants.  *See id.*  However, the Court held that Plaintiff's malicious prosecution claim was timely.  *See id.* at 22.  As such, Plaintiff's remaining claims that the Court will consider in the present motion are Count II (Section 1983 malicious prosecution and conspiracy to commit malicious protection) and Count III (Section 1983 *Monell* claim against the County).  *See* Dkt. No. 1 ¶¶ 1214-20.

## C.  Malicious Prosecution

### 1. Legal Standard

"The Fourth Amendment right implicated in a malicious prosecution action is the right to be free of unreasonable seizure of the person – i.e., the right to be free of unreasonable or unwanted restraints on personal liberty." *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 116 (2d Cir. 1995).  The elements of malicious prosecution under Section 1983 effectively mirror the elements of the same claim under New York law.  *See Hygh v. Jacobs*, 961 F.2d 359, 366 (2d Cir. 1992) (citations omitted).  Accordingly, to state a cause of action for malicious prosecution in New York, the plaintiff must allege "(1) the initiation or continuation of a criminal proceeding against

plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003) (quotation omitted).

"Probable cause, in the context of malicious prosecution, has . . . been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Stansbury v. Wertman*, 721 F.3d 84, 95 (2d Cir. 2013) (quoting *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003)). Courts look at the "totality of the circumstances" to determine if probable cause exists. *See id.* at 89. "[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York." *Manganiello v. City of New York*, 612 F.3d 149, 161-62 (2d Cir. 2010) (quoting *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003)). "Probable cause may . . . exist where the officer has relied on mistaken information, so long as it was reasonable for him to rely on it. However, 'the failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause.'" *Id.* at 161 (quoting *Colon v. City of New York*, 60 N.Y.2d 78, 82 (1983)) (internal citation omitted). Moreover, "indictment by a grand jury creates a presumption of probable cause that may *only* be rebutted by evidence that the indictment was procured by 'fraud, perjury, the suppression of evidence or other [official] conduct undertaken in bad faith.'" *Savino*, 331 F.3d at 72 (quoting *Colon*, 60 N.Y.2d at 83). Finally, the lack of probable cause alone "generally creates an inference of malice." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 131 (2d Cir. 1997).

To sustain a malicious prosecution claim under Section 1983, "the state law elements must be met, and there must also be a showing of a 'sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights.'" *Rutigliano v. City of New York*, 326 Fed. Appx. 5, 8-9 (2d. Cir. 2009) (quotation omitted). As the Second Circuit has stated,

> The Fourth Amendment right implicated in a malicious prosecution
> action is the right to be free of unreasonable seizure of the
> person–i.e., the right to be free of unreasonable or unwarranted
> restrains on personal liberty.  A plaintiff asserting a Fourth
> Amendment malicious prosecution claim under § 1983 must
> therefore show some deprivation of liberty consistent with the
> concept of "seizure."

*Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000) (quoting *Singer v. Fulton Cnty.*

*Sheriff*, 63 F.3d 110, 116 (2d Cir. 1995)).  Thus, a plaintiff pursuing a malicious prosecution

claim "under § 1983 must show that the seizure resulted from the initiation or pendency of

judicial proceedings." *Id.*

### 2. Defendant Smith[2]

At the outset, Defendant Smith is entitled to Eleventh Amendment immunity for all claims

against him in his official capacity.  The Eleventh Amendment provides a state with sovereign

immunity from suit.  *See Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254 (2011)

(citation omitted).  "To the extent that a state official is sued for damages in his official capacity,

such a suit is deemed to be a suit against the state, and the official is entitled to invoke the

Eleventh Amendment immunity belonging to the state." *Ying Jing Gan v. City of New York*, 996

F.2d 522, 529 (2d Cir. 1993) (citations omitted).  Here, since Plaintiff sued Defendant Smith for

damages in his official capacity, that is deemed to be a suit against the state, and Defendant Smith

is entitled to Eleventh Amendment immunity.  The Court notes that Defendant Smith did not raise

this defense in his motion to dismiss, but "lower courts may raise the issue of Eleventh

Amendment immunity sua sponte." *Woods v. Rondout Valley Central School Dist. Bd of Educ.*,

---

[2] The Court will not consider the self-serving affidavit or additional evidence that
Defendant Smith submitted with this motion.  *See Friedl v. City of New York*, 210 F.3d 79, 83-84
(2d Cir. 2000).

466 F.3d 232, 238 (2d Cir. 2006). Accordingly, all claims against Defendant Smith in his official capacity are dismissed.

With respect to Defendant Smith's individual liability, Plaintiff clearly pleads the first two elements of a malicious prosecution claim. Defendant Smith commenced a grand jury proceeding against Plaintiff in September of 2010. *See* Dkt. No. 1 ¶ 708. Plaintiff was indicted and charged with 74 felony counts and then arrested on January 28, 2011. *See id.* ¶¶ 2, 1199. Defendant Smith continued the prosecution of Plaintiff in the Rensselaer County Supreme Court until Plaintiff was ultimately acquitted of all charges on December 21, 2012. *See id.* ¶¶ 1190, 1200; *see also Phillips v. DeAngelis*, 571 F. Supp. 2d 347, 353 (N.D.N.Y. 2008) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997)) ("The requirement that a plaintiff show an initiation or continuation of a criminal proceeding by the defendant may be satisfied by a showing that the defendants filed formal charges and caused the plaintiff to be arraigned").

Turning to the third element, Defendant Smith claims that he had probable cause to commence the proceeding, and that Plaintiff has not sufficiently rebutted the presumption of probable cause created by a grand jury indictment. *See* Dkt. No. 96-2 at 9-12. The Court held in the Prior Decision that Plaintiff has sufficiently rebutted the presumption of probable cause that a grand jury indictment creates. *See* Dkt. No. 114 at 28. The Court noted that Plaintiff's indictment was based, in part, upon affidavits from voters who claimed that their AABs had been falsified, which were prepared and notarized by Defendant Smith. *See id.*; Dkt. No. 1 ¶¶ 813, 815. At trial, two of the voters whose affidavits were presented at the grand jury proceeding allegedly testified that the signature on their purported affidavits was not genuine. *See* Dkt. No. 114 at 28; Dkt. No. 1 ¶ 816; *see also* Dkt. No. 1-1 at 26-30. The Court also noted the alleged false testimony of Defendant Ogden, who testified that the forged AABs were all falsified by the same person, but

later admitted that his testimony was not correct. *See* Dkt. No. 114 at 28. The Court further noted that Defendant O'Malley first testified that he wrote excuses on several AABs, which he testified probably came from the AB candidate who got the information from a democratic committee operative. *See id.*; Dkt. No. 1 ¶ 772. Plaintiff alleges that Defendant Smith called Defendant O'Malley at his home and encouraged him to change his testimony and instead testify that Plaintiff directed him to make up excuses and write them on the AABs. *See* Dkt. No. 114 at 28; Dkt. No. 1 ¶¶ 783-84. Defendant O'Malley allegedly changed his testimony in this manner. *See* Dkt. No. 1 ¶ 783. The Court held that based on these allegations of forgery, untruthful testimony, and suppression of evidence, Plaintiff has sufficiently rebutted the presumption of probable cause that a grand jury indictment creates. *See Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003) ("The presumption is rebuttable, and may be overcome by evidence establishing that the police witnesses 'have not made a complete and full statement of facts . . . that they have misrepresented or falsified evidence . . . or otherwise acted in bad faith.'") (quoting *Colon v. City of New York*, 60 N.Y.2d 78, 82 (1983)).

Although Plaintiff has rebutted the presumption of probable cause, he still must sufficiently allege that Defendant Smith lacked probable cause to commence the proceeding. Plaintiff alleges that, through Defendant Smith's investigation, he had sufficient evidence to prosecute Defendants McGrath, McInerney, John Brown, and Anthony DeFiglio for the AB forgery. *See* Dkt. No. 1 ¶¶ 335, 337. Specifically, Defendant Smith allegedly obtained numerous AB forged documents and the testimony of more than fifty witnesses, many of whom implicated Defendant McInerney in the forgery scheme. *Id.* ¶ 336. Plaintiff alleges that Mr. DeFiglio "admitted to Trey Smith and Ogden in October or November 2009 that the 2009 AB forgery was committed principally by McInerney and Brown and that [democratic candidates and operatives]

had engaged in the same AB forgery scheme . . . for at least the prior 25 years . . . ." *Id.* ¶ 107.

Plaintiff further alleges that Defendant Smith knew that Defendant McGrath was implicated in the

forgery scheme based on the inconsistencies between Defendant McGrath's claims and the

information provided by voters. *Id.* ¶¶ 624-26. For example, Marc Welch, a voter, claimed that

Defendant McGrath had him sign an AAB, but Marc Welch ended up voting in person instead,

even though an AB was filed on his behalf. *See id.* ¶ 624(e). Likewise, John Gilbert, a voter,

claimed that he did not sign an AAB, but Defendant McGrath claimed that Mr. Gilbert gave him

permission to vote his AB. *See id.* ¶ 624(c). Plaintiff alleges several other examples of

inconsistences that seemingly implicated Defendant McGrath. *See id.* ¶ 624. Moreover, Plaintiff

alleges that in November of 2010, Rensselaer County Board of Elections Commissioner

Lawrence Bugbee ("Commissioner Bugbee") provided Defendant Smith with twenty AABs filed

in 2007 and 2008 that had been forged in the same unique handwriting, which Commissioner

Bugbee allegedly identified as Defendant McInerney's handwriting. *See id.* ¶¶ 491-93.

Commissioner Bugbee also allegedly told Defendant Smith that the 2009 AB documents were

also forged by Defendants McInerney and McGrath. *See id.* ¶ 490.

Rather than follow this evidence, Defendant Smith allegedly targeted Plaintiff for the

forgery case. Plaintiff alleges that Defendant Smith told Defendants McInerney and John Brown

that they would not be prosecuted for the AB forgery. *See id.* ¶ 266. From 2009 through 2011,

Defendant Smith allegedly told officials in the NYSP that Defendants McInerney and John

Brown could not be prosecuted because the evidence against them "was not legally sufficient to

corroborate the testimony of DeFiglio or any accomplice or co-conspirator . . . ." *Id.* ¶ 573.

Plaintiff alleges that during the investigation of the AB fraud, Defendant Smith had officers in the

NYSP show voters a picture of Defendant McInerney that was over twenty years old and that did

not accurately depict his physical appearance at that time.  *Id.* ¶ 364.  As such, voters could not identify the perpetrator as Defendant McInerney.  *Id.* ¶ 365.  Moreover, Plaintiff alleges that Defendant Smith did not depose any other employee of the Rensselaer County Board of Elections "because it would have required [Defendant] O'Malley to give a false statement in furtherance of the conspiratorial prosecution and exposed the scheme at that time."  *Id.* ¶ 451.  Plaintiff further alleges that Defendant Smith did not perform a "relatively quick and inexpensive ink analysis" on the fourteen AABs that were filed on September 10, 2009 "because this evidence alone would have exonerated [Plaintiff], disproved the prosecution theory and proved the falsity of the testimony of [Defendants] Robillard, Ogden, and McGrath."  *Id.* ¶ 902.

Overall, Plaintiff contends that Defendant Smith

> pretentiously adopted and pursued a preposterous prosecution theory he knew was wrong; buried crucial testimony of DeFiglio and other witnesses; did not seek readily available evidence or the truthful cooperation of any perpetrator; accepted the self-serving incredible false assertions of many suspects implicated in the crimes; immunized or gave extraordinary favorable cooperation agreements to many suspects implicated in the crimes; purposely ignored material evidence; and fabricated false evidence against McDonough.

*Id.* ¶ 345.

In response, Defendant Smith argues that he had probable cause to commence the proceeding.  *See* Dkt. No. 96-2 at 11.  However, in his memorandum of law, Defendant Smith largely cites to material outside of the complaint to support his assertion that he had probable

cause. *See id.*  The Court will not consider such material at the motion to dismiss stage.[3]  *See Friedl v. City of New York*, 210 F.3d 79, 83-84 (2d Cir. 2000).

Plaintiff alleges that the only evidence Defendant Smith had to prosecute Plaintiff was an accusation by Defendant McGrath that was proven false, *see* Dkt. No. 1 ¶¶ 620-24, 714, a purported conversation between Defendant Smith and John Brown about AB agent names, *see id.* ¶ 714, and the finding of Plaintiff's DNA on three envelopes that contained forged ABs, *see id.* Plaintiff claims that Defendant Smith knew that Defendant McGrath's accusation was proven false by the voter affidavits and AB documents.  *See id.* ¶¶ 623-24.  With respect to the DNA finding, Plaintiff claims that his DNA was not found on the envelopes until after Defendant Smith proposed new extraction methods to be performed in the presence of Defendants Smith and Ogden.  *See id.* ¶¶ 694, 697.  Plaintiff further claims that he recalled helping Defendant Renna file two AABs and insert the AB into envelopes, but that he did not falsely vote or forge any AB envelopes.  *See id.* ¶¶ 699-701.  Although Plaintiff's DNA was found on three of the envelopes, considering Plaintiff's allegations that his DNA was not found until after Defendant Smith arrived at the crime lab and proposed new extraction methods, coupled with Plaintiff's theory that Defendant Smith fabricated other evidence and influenced testimony to implicate Plaintiff, the

---

[3] Specifically, Defendant Smith relies on a sworn statement given by Defendant McGrath to the NYSP and the grand jury testimony of several witnesses.  *See* Dkt. No. 96-2 at 11-12.  When ruling on a motion to dismiss, a court may consider "documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, [and] documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint."  *See Knox v. Countrywide Bank*, 4 F. Supp. 3d 499, 513 (E.D.N.Y. 2014) (citing *Nasso v. Bio Reference Labs., Inc.*, 892 F. Supp. 2d 439, 446 (E.D.N.Y. 2012)).  Here, these documents are not "integral" to the complaint, nor is there any indication that Plaintiff relied on them in drafting his complaint.  As such, the Court will not consider them at the motion to dismiss stage.

Court finds that the DNA results alone did not give Defendant Smith probable cause to prosecute Plaintiff.

The Court notes that, based on the exhibits in Plaintiff's complaint, Defendant Smith also had a statement from Anthony DeFiglio, a former clerk for the City of Troy Housing Authority, that possibly implicated Plaintiff. Mr. DeFiglio claimed that, with respect to the AB forgery scheme, "I know that there is no possible way that the Democratic Commissioner of the [Board of Elections], [Plaintiff], could not have known what was happening." Dkt. No. 1-1 at 12. This statement was given on November 6, 2009, before Defendant Smith commenced any proceedings against Plaintiff. *See id.* However, this is the only statement made by Mr. DeFiglio pertaining to Plaintiff, and appears to be merely speculative and provides no specific evidence against Plaintiff. Moreover, Plaintiff has sufficiently alleged that Defendants Smith and Ogden asked Mr. DeFiglio pointed questions in an attempt to implicate Plaintiff and not other democratic operatives. *See* Dkt. No. 1 ¶¶ 536-42. Plaintiff has also alleged that Mr. DeFiglio disclosed to Defendant Smith that Defendant McInerney was largely involved in the AB fraud, but Defendant Smith ignored that evidence. *See id.* ¶¶ 546-53. As such, Mr. DeFiglio's conclusory statement potentially implicating Plaintiff did not give Defendant Smith probable cause.

Considering Plaintiff's numerous specific allegations that Defendant Smith targeted Plaintiff despite ample evidence implicating other Defendants and political operatives, the Court finds that, considering the totality of the circumstances, Plaintiff has sufficiently alleged that Defendant Smith lacked probable cause to prosecute Plaintiff.

Turning to the fourth element, "[a] lack of probable cause generally creates an inference of malice." *Boyd*, 336 F.3d at 78 (citing *Ricciuti*, 124 F.3d at 131). As discussed above, Plaintiff's

allegations that Defendant Smith initiated a "scapegoat prosecution" against Plaintiff to shield other political candidates from prosecution are sufficient to satisfy the malice requirement.

Plaintiff must also allege a "sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Rutigliano v. City of New York*, 326 Fed. Appx. 5, 8-9 (2d. Cir. 2009) (quoting *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000)). The Court found in the Prior Decision that Plaintiff met this element. *See* Dkt. No. 114 at 29-30. The Court noted that Plaintiff was required to endure two separate trials and was not acquitted of the charges against him until nearly two years until after he was indicted. *See* Dkt. No. 1 ¶¶ 1199-1200. These allegations clearly state that Plaintiff suffered a restraint on his liberty that extended beyond the arraignment itself. *See Rohman*, 215 F.3d at 216 (holding that a plaintiff who was required "to return to court on at least five occasions before the charges against him were ultimately dropped[,]" coupled with the fact that a New York criminal defendant released on his own recognizance "must 'render himself at all times amenable to the orders and processes of the court,'" was sufficient to allege a post-arraignment liberty restraint).

Accordingly, the Court finds that Plaintiff has sufficiently alleged facts to support a Section 1983 malicious prosecution claim against Defendant Smith.

### 3. Absolute Prosecutorial Immunity

Defendant Smith argues that he is entitled to absolute prosecutorial immunity that cannot be compromised by general allegations of fraud and conspiracy. *See* Dkt. No. 96-2 at 13-14. Defendant Smith asserts that "plaintiff's conclusory and extravagant allegations of conspiracy is [sic] merely a device . . . to circumvent [Defendant Smith's] entitlement to absolute immunity on each of plaintiff's claims." *Id.*

"Prosecutors are entitled to absolute immunity when they engage in activities 'intimately associated with the judicial phase of the criminal process,' *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976), and done 'in the course of [their] role as . . . advocate[s] for the State,' *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)." *Kent v.Cardone*, 404 Fed. Appx. 540, 542 (2d Cir. 2011). The Second Circuit uses a "functional approach" to determine whether an action is prosecutorial, which considers "the nature of the function performed, not the identify of the actor who performed it." *Id.* (quoting *Burns v. Reed*, 500 U.S. 478, 486-87 (1991)). The Supreme Court has provided the following guidance to determine whether an action is prosecutorial:

> There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand. When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other. Thus, if a prosecutor plans and executes a raid on a suspected weapons cache, he has no greater claim to complete immunity than activities of police officers allegedly acting under his direction.

*Kalina v. Fletcher*, 522 U.S. 118, 126 (1997) (citations and internal quotation marks omitted). As such, a prosecutor receives absolute immunity for acts done as an advocate, while acts done in an investigatory capacity are entitled to only qualified immunity. *See Zahrey v. Coffey*, 221 F.3d 342, 346-47 (2d Cir. 2000).

As the Second Circuit has stated, "[t]he line between a prosecutor's advocacy and investigating roles might sometimes be difficult to draw." *Id.* at 347 (citing *Hill v. City of New York*, 45 F.3d 653, 662-63 (2d Cir. 1995)). The Supreme Court has heard several cases on this distinction between a prosecutor's role as advocate and investigator, and has held that absolute immunity applies when a prosecutor appears and presents evidence at a probable cause hearing,

*see Burns*, 500 U.S. at 492, and when a prosecutor prepares and files charging documents, *see Kalina*, 522 U.S. at 129. The Supreme Court has held that absolute immunity does not apply when a prosecutor gives legal advice to police officers, *see Burns*, 500 U.S. at 492-94, when a prosecutor makes statements to the media, *see Buckley*, 509 U.S. at 277-78, and when a prosecutor acts as a complaining witness to satisfy probable cause for a warrant application, *see Kalina*, 522 U.S. at 129-31. The Second Circuit has also noted that "[t]he majority opinion in [*Buckley*] suggests that a prosecutor's conduct prior to the establishment of probable cause should be considered investigative: '[a] prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested.'" *Zahrey*, 221 F.3d at 347 n.2 (quoting *Buckley*, 509 U.S. at 274).

The Second Circuit has also drawn a further distinction with respect to investigative acts:

> [T]he pre-litigation function that a prosecutor performs has at least two aspects: (1) the supervision of and interaction with law enforcement agencies in *acquiring* evidence which might be used in a prosecution, and (2) the *organization, evaluation, and marshalling* of this evidence into a form that will enable the prosecutor to try a case or to seek a warrant, indictment, or order. While both of these categories of activities occur before the commencement of formal legal proceedings, and therefore may be loosely termed "investigative," we believe that the first category consists of actions that are of a police nature and are not entitled to absolute protection.

*Barbera v. Smith*, 836 F.2d 96, 100-01 (2d Cir. 1987) (citations omitted).

Alleging that a prosecutor acted in a conspiracy to deprive a plaintiff certain rights does not remove absolute immunity protection that the prosecutor receives. *Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139, 1148 (2d Cir. 1995). The Second Circuit has explained that "[t]he fact that such a conspiracy is certainly not something that is *properly* within the role of a prosecutor is immaterial, because 'the immunity attaches to his function, not to the manner in which he performed it.'" *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (quoting *Barrett v. United States*, 798

F.2d 565, 573 (2d Cir. 1986)).  Moreover, the Second Circuit has held that an absolute immunity defense can often be resolved at the motion to dismiss stage because the defense depends on the nature of the function being performed by the defendant, which "is often clear from the face of the complaint."  *Shmueli v. City of New York*, 424 F.3d 231, 236 (2d Cir. 2005) (citations omitted).

Since the initiation of a prosecution is an essential element of a malicious prosecution claim, and since prosecutors have absolute immunity for actions taken in their role as advocates, prosecutors generally have absolute immunity from malicious prosecution claims.  *See id.* at 237 ("Because the immunity attaches to the official prosecutorial function, *see, e.g.*, *Imbler*, 424 U.S. at 430, 96 S. Ct. 984, and because the initiation and pursuit of a criminal prosecution are quintessential prosecutorial functions, *see id.*, the prosecutor has absolute immunity for the initiation and conduct of a prosecution 'unless [he] proceeds in the clear absence of all jurisdiction.'") (quoting *Barr v. Abrams*, 810 F.2d 358, 361 (2d Cir. 1987)); *Del Col v. Rice*, No. 11 CV 5138, 2012 WL 6589839, *5 (E.D.N.Y. Dec. 18, 2012) ("'[I]t is well-established in the Second Circuit that claims of malicious prosecution' relate to a prosecutors' role as an advocate; and, thus, prosecutors are absolutely immune from malicious prosecution claims.") (quoting *McKeon v. Daley*, 101 F. Supp. 2d 79, 87 (N.D.N.Y. 2000)), *aff'd*, 8 Fed. Appx. 138 (2d Cir. 2001).  In the present matter, unless Defendant Smith acted in clear absence of all jurisdiction, he is absolutely immune from Plaintiff's malicious prosecution claim.  Plaintiff argues that Defendant Smith's appointment was invalid, but Plaintiff has provided no argument that this Court has subject matter jurisdiction over those claims.[4]  Moreover, to the extent that Plaintiff

---

[4] Plaintiff asserts that, since Defendant Smith's appointment as special prosecutor was unlawful and invalid, Defendant Smith had no legal authority to prosecute Plaintiff.  *See* Dkt. No. 1 ¶¶ 229-35; Dkt. No. 108 at 14-16.  On September 28, 2009, Judge Robert M. Jacon of the Rensselaer County Court executed an order appointing Defendant Smith as special prosecutor. *See* Dkt. No. 1 ¶ 232; Dkt. No. 99-3 at 2.  It appears from the complaint that Plaintiff moved to

argues that Defendant Smith acted in the absence of jurisdiction because he knew that Plaintiff was innocent but still continued the prosecution, the Second Circuit has rejected that argument. *See Shmueli*, 424 F.3d at 238-39. Accordingly, since Defendant Smith is entitled to absolute immunity, his motion to dismiss Plaintiff's malicious prosecution claim is granted.

Defendant Smith is also entitled to absolute immunity from Plaintiff's conspiracy to commit malicious prosecution claim. "[I]t is also well established that absolute prosecutorial immunity extends to conspiracy allegations." *Covington v. City of New York*, 916 F. Supp. 282, 287 (S.D.N.Y. 1996). Since Defendant Smith has absolute immunity from Plaintiff's malicious prosecution claim, he is also immune from Plaintiff's conspiracy to commit malicious prosecution claim. *See Pinaud*, 52 F.3d at 1148 ("As this Court and other circuits have repeatedly held, since absolute immunity covers 'virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate,' [*Dory*, 25 F.3d at 83], when the underlying activity at issue is covered by absolute immunity, the 'plaintiff derives no benefit from alleging a conspiracy.'") (quoting *Hill*, 45 F.3d at 659 n.2); *Rehberg v. Paulk*, 611 F.3d 828, 854 (11th Cir. 2010) ("A

---

disqualify Defendant Smith in 2011 but Defendant Smith successfully opposed Plaintiff's motion. *See* Dkt. No. 1 ¶¶ 859-60. It is not entirely clear how Plaintiff attempted to disqualify Defendant Smith, but to the extent that Plaintiff lost in state court and is now attempting to relitigate that case in federal court, those claims are barred by the *Rooker-Feldman* doctrine. *See Exxon Mobile Corp., v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005) (holding that federal courts do not have jurisdiction to hear "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceeding commenced and inviting district court review and rejection of those judgments"). Moreover, Plaintiff relies on *Working Families Party v. Fisher*, 23 N.Y.3d 539 (2014) to support the merits of his claim, but in that case, the New York Court of Appeals held that a N.Y. C.P.L.R. Article 78 proceeding was an appropriate remedy to void the improper appointment of a special prosecutor. *See Working Families Party v. Fisher*, 23 N.Y.3d 539, 544 (2014). Here, it appears that Plaintiff's claims regarding Defendant Smith's appointment are merely an attempt to appeal a state-court order or relitigate a state-court proceeding, and Plaintiff has provided no argument that this Court has jurisdiction to hear those claims. As such, the Court will not entertain Plaintiff's claims that Defendant Smith's appointment was invalid.

prosecutor cannot be liable for 'conspiracy' to violate a defendant's constitutional rights by prosecuting him if the prosecutor also is immune from liability for actually prosecuting the defendant.") (citation omitted); *Reasonover v. St. Louis Cty., Mo.*, 447 F.3d 569, 580 (8th Cir. 2006) ("[A] prosecutor is absolutely immune from a civil conspiracy charge when his alleged participation in the conspiracy consists of otherwise immune acts.") (citation omitted). Accordingly, to the extent that Plaintiff alleges a conspiracy to commit malicious prosecution claim against Defendant Smith, that claim is dismissed.

The Court acknowledges that Plaintiff has sufficiently alleged that some of Defendant Smith's actions were taken in an investigative role, and thus would not be entitled to absolute immunity. Plaintiff alleges that Defendant Smith instructed the NYSP investigators to show voters a twenty-year-old photograph of Defendant McInerney so that voters would not be able to identify him as the individual who had them sign their AABs. *See* Dkt. No. 1 ¶¶ 364-65. Plaintiff also alleges that Defendant Smith never showed voters photographs of Defendants John and Daniel Brown or any other democratic operative allegedly involved in the fraud. *See id.* ¶ 366. Likewise, before Defendant Smith commenced a grand jury proceeding, he allegedly did not hire a law enforcement forensic document examiner or handwriting expert to analyze the AABs in fear that a handwriting analysis would exonerate Plaintiff. *See id.* ¶¶ 667-70. These actions were all taken before Plaintiff's indictment and before Defendant Smith had probable cause to prosecute Plaintiff. As the Supreme Court has stated, "[a] prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." *Buckley*, 509 U.S. at 274.

Moreover, Plaintiff alleges that Defendant Smith misled the NYSP investigators into believing that Defendants McInerney, John Brown, and Renna could not be prosecuted in an

attempt to thwart any investigation of those Defendants. *See* Dkt. No. 1 ¶¶ 350, 576. Plaintiff

claims that, once Senior Investigator O'Brien of the NYSP initiated an independent investigation

into the AB fraud, Defendants Smith and Ogden orchestrated a false personnel complaint against

O'Brien in an effort to quash the independent investigation. *See id.* ¶¶ 1067-69. Plaintiff also

alleges that Defendant Smith attempted to influence the FBI investigation by leaking the name of

the FBI agent conducting the investigation to impair his ability to talk to witnesses and suspects.

*See id.* ¶¶ 934-37.

However, as discussed above, the distinction between a prosecutor's investigative and

prosecutorial functions is immaterial with respect to a malicious prosecution claim, since

prosecutors are generally immune from such claims. If Plaintiff's fabrication of evidence claim

was timely, or if Plaintiff asserted other claims against Defendant Smith that did not involve his

role as an advocate, then the distinction between investigative and prosecutorial acts would be

relevant. Since Plaintiff's only remaining claim is for malicious prosecution and since Defendant

Smith has absolute immunity from that claim, Defendant Smith is hereby dismissed from this

action.

### *4. Defendant Ogden*

Plaintiff has failed to allege that Defendant Ogden is directly responsible for his malicious

prosecution. Plaintiff alleges that Defendant Smith was the one who initiated the prosecution of

Plaintiff. *See* Dkt. No. 1 ¶¶ 322-23, 708. A police officer may be found liable for malicious

prosecution if he "continued" the prosecution of a plaintiff, but "[o]nce control of a prosecution

has passed to a prosecuting attorney, a police officer may only be liable for 'continuing' the

prosecution if he or she '[insists] upon or [urges] further prosecution.'" *Burt v. Aleman*, No. 05-

CV-4493, 2008 WL 1927371, *5 (E.D.N.Y. Apr. 30, 2008) (quoting *Dirienzo v. United States*,

690 F. Supp. 1149, 1158 (D. Conn. 1988)).  Plaintiff alleges that Defendant Smith was in control of the prosecution and much of the investigation, and that Defendant Smith initiated and directed the alleged scapegoat prosecution of Plaintiff.  Defendant Smith became involved in the investigation several weeks before Defendant Ogden did.  *See* Dkt. No. 1 ¶¶ 322-23.  Although Plaintiff claims that Defendants Smith and Ogden worked closely together during the investigation, many of Defendant Ogden's actions were taken alongside Defendant Smith or at the behest of Defendant Smith.  For example, Plaintiff alleges that Defendant Smith directed Defendant Ogden to interview Plaintiff and take written depositions several times.  *See* Dkt. No. 1 ¶¶ 472-73.  Plaintiff further alleges that Defendant Ogden's grand jury testimony was fabricated in conspiracy with Defendant Smith.  *See id.* ¶¶ 758-61.  However, Plaintiff does not allege that Defendant Ogden was the one insisting or urging Defendant Smith to continue the prosecution.

Moreover, Defendant Ogden is entitled to absolute immunity for his grand jury and trial testimony.  *See Coggins v. Cnty. of Nassau*, 988 F. Supp. 2d 231, 244 (E.D.N.Y. 2013) (citing *Briscoe v. LaHue*, 460 U.S. 325, 335-36 (1983)).  Of course, a grand jury witness does not receive absolute immunity for all actions arising out of the substance testified about.  *See Coggins v. Buonora*, 776 F.3d 108, 112-13 (2d Cir. 2015).  In *Coggins*, the Second Circuit held that a plaintiff may state a valid malicious prosecution claim against a grand jury witness, even with absolute immunity for the testimony given in such proceeding, if the plaintiff alleges actions taken in excess of that witness' testimony that would amount to an independent Section 1983 claim.  *Id.* at 113.  However, in the present matter, Plaintiff has not stated a valid malicious prosecution claim against Defendant Ogden.

The Court notes that Defendant Ogden did not raise an absolute immunity defense, but Plaintiff himself acknowledges that Defendant Ogden is entitled to absolute immunity for his

24

testimony.  *See* Dkt. No. 86 at 9.  Instead, Plaintiff argues that Defendant Ogden should be liable for his investigative acts performed "outside the judicial process."  *See id.* at 14.  As discussed above, the Court has considered the actions taken by Defendant Ogden outside of his testimony, and Plaintiff has not sufficiently alleged a malicious prosecution claim against him.

Accordingly, to the extent that Plaintiff's complaint contains a direct cause of action for malicious prosecution against Defendant Ogden, any such claim is dismissed.

**D.      Section 1983 Conspiracy**

*1. Legal Standard*

Plaintiff alleges that Defendants Ogden and Smith conspired to maliciously prosecute Plaintiff.  *See* Dkt. No. 1 ¶ 1215.  To state a Section 1983 conspiracy claim, the complaint must allege "(1) an agreement between two or more state actors or between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."  *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999) (citing *Carson v. Lewis*, 35 F. Supp. 2d 250, 271 (E.D.N.Y. 1999)).  Thus, a plaintiff must first allege sufficient facts to support an underlying constitutional violation in order to state a valid Section 1983 conspiracy claim.  *See Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001).  Moreover, "[w]hile 'conclusory allegations' of a § 1983 conspiracy are insufficient, we have recognized that such 'conspiracies are by their very nature secretive operations,' and may have to be proven by circumstantial, rather than direct, evidence."  *Pangburn*, 200 F.3d at 72 (quoting *Dwares v. City of New York*, 985 F.2d 94, 99-100 (2d Cir. 1993); *Rounseville v. Zahl*, 13 F.3d 625, 632 (2d Cir. 1994)).

In the instant case, the alleged unconstitutional injury implicated by the conspiracy is based on a claim of malicious prosecution.  As discussed above, Plaintiff has adequately pled

facts to support a malicious prosecution claim. However, Plaintiff has only alleged that

Defendant Smith is directly responsible for Plaintiff's malicious prosecution, and Defendant

Smith is entitled to absolute immunity from that claim. As such, the Court is faced with the

question of whether Plaintiff can sustain a Section 1983 conspiracy claim based on his alleged

constitutional violation even though the underlying Section 1983 claim itself fails due to absolute

immunity. In other words, the question is whether Defendants Ogden and McInerney, who are

not protected by absolute immunity from Plaintiff's malicious prosecution claim, can be held

liable for conspiring with Defendant Smith, who is protected by absolute immunity, even though

the underlying claim has been dismissed on immunity grounds.

Courts generally dismiss Section 1983 conspiracy claims when the underlying Section

1983 claim is dismissed. The reason for this is that "a civil conspiracy claim 'does not set forth an

independent cause of action' but rather is 'sustainable only after an underlying . . . claim has been

established.'" *DeMartino v. New York State Department of Labor*, 177 F. Supp. 3d 342, 373

(E.D.N.Y. 2016) (quoting *Clark v. City of Oswego*, No. 03-CV-202, 2007 WL 925724, *7

(N.D.N.Y. Mar. 26, 2007)) (alteration omitted). Most cases that have dismissed Section 1983

conspiracy claims dismiss them because the plaintiff failed to sufficiently establish a

constitutional violation. *See, e.g.*, *id.*; *Curley*, 268 F.3d at 72 ("Since plaintiff cannot establish a

claim for false arrest or the use of excessive force, he may not maintain a § 1983 cause of action

for conspiracy.") (citation omitted); *Mitchell v. County of Nassau*, 768 F. Supp. 2d 545, 561-64

(E.D.N.Y. 2011) ("However, a § 1983 conspiracy claim fails as a matter of law where there is no

underlying constitutional violation.") (citations omitted); *Tirse v. Gilbo*, 6:15-CV-0987, 2016 WL

4046780, *18 (N.D.N.Y. July 27, 2016) (dismissing the plaintiff's Section 1983 conspiracy claims

after finding that the plaintiff failed to sufficiently allege the underlying Section 1983 claims)

(citations omitted). The present case is distinguishable because Plaintiff has sufficiently alleged that he suffered a constitutional violation, but the only Defendant directly responsible for that violation is shielded by immunity.

In *Dennis v. Sparks*, 449 U.S. 24 (1980), the Supreme Court held that private parties can still be liable for a Section 1983 conspiracy claim for conspiring with a judge, even though judges are entitled to absolute immunity. *See Dennis v. Sparks*, 449 U.S. 24, 28-29 (1980). Although that case does not directly answer the question in this context of whether a plaintiff can sustain a Section 1983 conspiracy claim when the underlying claims have been dismissed on immunity grounds, other courts relying on *Dennis* have concluded that such conspiracy claims should not be dismissed. In a Southern District of New York case involving a conspiracy claim against a judge entitled to immunity, the district court originally dismissed all of the plaintiff's claims, including the plaintiff's Section 1983 conspiracy claim. *See Carvel v. New York State*, No. 08 Civ. 3305, 2010 WL 1404154, *1 (S.D.N.Y. Apr. 6, 2010) (explaining that the court originally dismissed all of the plaintiff's claims). However, the Second Circuit, in a summary order citing *Dennis*, held that the plaintiff could still sustain a Section 1983 conspiracy claim against the other defendants even though the judge was entitled to immunity, and thus remanded the case for the district court to consider only the plaintiff's Section 1983 conspiracy claim. *See Carvel v. New York*, 369 Fed. Appx. 269, 270 (2d Cir. 2010). Although the district court ultimately dismissed that case due to the plaintiff's failure to sufficiently allege a conspiracy claim, the clear implication from that case is that a plaintiff may assert a Section 1983 conspiracy claim even if the underlying claims have been dismissed on immunity grounds. *See Carvel v. Scarpino*, No. 08 Civ. 3305, 2010 WL 5174392, *7-10 (S.D.N.Y. Dec. 16, 2010). Likewise, in *Douglas v. New York State Adirondack Park Agency*, 895 F. Supp. 2d 321 (N.D.N.Y. 2012), the district court faced the question of

whether private parties can be liable for conspiring with a prosecutor to maliciously prosecute the plaintiff.  *See Douglas v. New York State Adirondack Park Agency*, 895 F. Supp. 2d 321, 359 n.27 (N.D.N.Y. 2012).  The court, relying on *Dennis*, concluded that the prosecutor's immunity did not bar the liability of a co-conspirator with respect to the malicious prosecution claim.  *See id.* Although the plaintiff in that case sufficiently alleged other constitutional violations such that the underlying Section 1983 claims were not dismissed, that case held that a prosecutor's immunity should not also shield co-conspirators from a malicious prosecution claim.  *See id.*

Moreover, the Court notes that the elements for a conspiracy claim do not require that an underlying Section 1983 claim exist – only that the state actors enter into an agreement to inflict an unconstitutional injury, and an overt act in furtherance of that agreement causing damages. *Pangburn*, 200 F.3d at 72.  As discussed above, normally in a conspiracy case an underlying Section 1983 claim exists, but in this case, Plaintiff has sufficiently alleged an unconstitutional injury despite the dismissal of Plaintiff's underlying Section 1983 claim.  Considering that Plaintiff has sufficiently alleged a constitutional violation, the Court finds that it is possible for Plaintiff to sufficiently allege a Section 1983 conspiracy to commit malicious prosecution claim, even though the underlying claim has been dismissed on immunity grounds.  Concluding otherwise would result in Defendant Smith's prosecutorial immunity also shielding Defendants Ogden and McInerney from liability on Plaintiff's conspiracy claims, even though those Defendants did not act in a prosecutorial role.

Turning to the merits of Plaintiff's Section 1983 conspiracy claim against Defendant Ogden, Plaintiff sufficiently alleges that Defendants Smith and Ogden conspired together in the alleged malicious prosecution of Plaintiff.  At the outset, both Defendant Smith – a special prosecutor, and Defendant Ogden – a NYSP investigator, are state actors for the purposes of this

claim.  Plaintiff alleges a number of overt acts committed by both Defendants in furtherance of Plaintiff's prosecution.  According to the complaint, Defendant Smith admitted that Defendant Ogden had been "working on [the] case with [him] for two years," at "every step of the way," and that Defendant Smith considered them "to basically be one entity working together."  Dkt. No. 1 ¶ 331.  Plaintiff has also attached to his complaint several e-mails between Defendants Smith and Ogden discussing the case and the theories of prosecution.  *See* Dkt. No. 1-1 at 21-24.

Plaintiff alleges that Defendant Ogden assisted Defendant Smith in interviewing witnesses, where they asked only pointed questions in an attempt to implicate Plaintiff, but failed to ask questions that would implicate other democratic operatives.  *See* Dkt. No. 1 ¶¶ 514, 536-42. Plaintiff alleges that, at Defendant Smith's Direction, Defendant Ogden interviewed Plaintiff at the NYSP station, but did not ask questions about the filing of the AABs that would possibly implicate Defendants McGrath, Brown, Renna, or McInerney.  *See id.* ¶¶ 472-73.  Likewise, Plaintiff claims that Defendants Smith and Ogden obtained enough evidence to convict certain democratic operatives, including affidavits from voters that clearly implicated Defendant McGrath, but buried that evidence and offered immunity to those democratic operatives.  *See id.* ¶¶ 349, 624-26.  Plaintiff further alleges that Defendant Ogden agreed with Defendant Smith's decision to not obtain an ink analysis on certain AABs in fear that an ink analysis would exonerate Plaintiff.  *See id.* ¶ 902.  Moreover, Plaintiff alleges that Defendant Ogden was also aware of Commissioner Bugbee's claim that Defendant McInerney was guilty of the AB forgeries from 2007 and 2008, but Defendants Ogden and Smith ignored this evidence in their investigation of the 2009 forgeries.  *See id.* ¶¶ 488-98.

Further, Plaintiff claims that Defendant Ogden completed an affidavit alleging that "the AB forgery was committed in conspiracy by McGrath, Brown, McInerney and others, including

[Plaintiff]." *Id.* ¶ 710.  This affidavit was the basis for Defendant Smith getting a DNA analysis of the forged AB envelopes.  *Id.*  Defendant Ogden also allegedly assisted Defendant Smith in orchestrating a "false personnel complaint and/or departmental charges to be made against" senior investigator O'Brien, in order to impede O'Brien's independent investigation into the AB forgeries.  *See id.* ¶¶ 1067-69.  This complaint was orchestrated after Plaintiff's indictment, and presumably in an attempt to thwart O'Brien's investigation so that Defendant Smith could continue to prosecute Plaintiff.  *See id.* ¶¶ 944, 1067-69.  Although some of these alleged actions were taken early on in the investigation, Plaintiff sufficiently alleges that Defendants Smith and Ogden prevented other investigators from discovering the actual perpetrators of the AB forgery scheme, which led to Plaintiff's alleged malicious prosecution.

In sum, Plaintiff has sufficiently alleged that Defendant Ogden acted in concert with Defendant Smith to maliciously prosecute Plaintiff.  Plaintiff alleges that both Defendants worked closely together and consistently ignored or failed to obtain evidence that incriminated other Defendants in an effort to initiate and continue Plaintiff's prosecution.  Thus, Plaintiff has sufficiently stated a Section 1983 conspiracy to commit malicious prosecution claim against Defendant Ogden.

### E.      County of Rensselaer

Count III of Plaintiff's complaint alleges a Section 1983 *Monell* claim against the County.  *See* Dkt. No. 1 ¶¶ 1219-20.  Plaintiff alleges that "Defendant County violated the plaintiff's rights and caused him said deprivations through its policymaking acts . . . as alleged herein."  *Id.* ¶ 1220.  In response, the County argues that Defendants Smith and McNally are not County actors or

policymakers. *See* Dkt. No. 95 at 13-20. The County further argues that Plaintiff has not

sufficiently alleged facts that establish municipal liability.[5] *See id.* at 11-13.

"Although municipalities are within the ambit of section 1983, municipal liability does not

attach for actions undertaken by city employees under a theory of *respondeat superior.*" *Birdsall*

*v. City of Hartford*, 249 F. Supp. 2d 163, 173 (D. Conn. 2003) (citing *Monell v. New York City*

*Dep't of Soc. Servs. of New York*, 436 U.S. 658, 691 (1978)). Despite the fact that *respondeat*

*superior* liability does not lie, a municipal entity or employee sued in his or her official capacity

can be held accountable for a constitutional violation which has occurred pursuant to "a policy

statement, ordinance, regulation, or decision officially adopted and promulgated by [the

municipality's] officers . . . [or] pursuant to governmental 'custom' even though such a custom has

not received formal approval through the body's official decision-making channels." *Monell*, 436

U.S. at 690-91. Such municipal liability can be established in a case such as this in several

different ways, including through proof of an officially adopted rule or a widespread, informal

custom demonstrating "a deliberate government policy or failing to train or supervise its officers."

*Bruker v. City of New York*, 337 F. Supp. 2d 539, 556 (S.D.N.Y. 2004) (quoting *Anthony v. City*

*of New York*, 339 F.3d 129, 140 (2d Cir. 2003)). A plaintiff may also show that the allegedly

unconstitutional action was "taken or caused by an official whose actions represent an official

---

[5] In opposition to the County's motion, Plaintiff submitted a twenty-five page memorandum of law, but also attached a twenty-one page exhibit (Exhibit A) and other documents which are effectively additional memoranda of law. *See* Dkt. No. 115-1. The County argues that this filing violates Local Rule 7.1, which provides that "[n]o party shall file or serve a memorandum of law that exceeds twenty-five (25) pages in length, unless that party obtains leave of the judge hearing the motion prior to filing." N.D.N.Y. Local Rule 7.1. In the Prior Decision, the Court noted that Plaintiff had exceeded the page limit requirements set forth in the Local Rules, and ordered Plaintiff to strictly abide by the page limit requirements henceforth. Plaintiff filed this response with the attached exhibits after the Prior Decision was issued. Since the filing of these exhibits (which are effectively memoranda of law) is in violation of Rule 7.1, the Court will not consider them in deciding the present motion.

policy," or that municipal officers have acquiesced in or condoned a known policy, custom, or practice. *See Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000), *cert. denied sub nom.*, *County of Schenectady v. Jeffes*, 531 U.S. 813 (2000); *see also Wenger v. Canastota Cent. Sch. Dist.*, No. 5:95-CV-1081, 2004 WL 726007, *3 (N.D.N.Y. Apr. 5, 2004).

When a governmental official is sued in his official capacity, "a governmental entity is liable under Section 1983 only when the entity itself is a moving force behind the deprivation; thus, in an official-capacity suit the entity's policy or custom must have played a part in the violation of federal law." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (internal citations and quotation marks omitted). A municipal policy may be established by the single act giving rise to a plaintiff's claims if it was "committed by a city official 'responsible for establishing final policy with respect to the subject matter in question,' and . . . represent[ed] a deliberate and considered choice among competing alternatives." *Hall v. Town of Brighton*, No. 13-CV-6155, 2014 WL 340106, *5 (W.D.N.Y. Jan. 30, 2014) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986) (plurality opinion)). When a plaintiff attempts to prove municipal liability "by a city employee's single tortious decision or course of action, the inquiry focuses on whether the actions of the employee in question may be said to represent the conscious choices of the municipality itself." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 126 (2d Cir. 2004) (citing *Pembaur*, 475 U.S. at 481-82). Thus, the single unconstitutional act of an official with "final policymaking authority" can subject a municipality to liability under Section 1983. *Pembaur*, 475 U.S. at 483.

Whether a municipal employee has "'final policymaking authority' is a question of state law" to be decided by the court. *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) (quoting *St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1998)). Such a determination is made by "[r]eviewing the relevant legal materials, including state and local positive law, as well as

"'custom or usage" having the force of law.'" *Id.* (quoting *Praprotnik*, 485 U.S. at 124 n.1).

Importantly, "the official in question need not be a municipal policymaker for all purposes.

Rather, with respect to the conduct challenged, he must be 'responsible under state law for making

policy *in that area* of the [municipality's] business.'" *Barnes*, 208 F.3d at 57 (quoting *Praprotnik*,

485 U.S. at 123) (other citations omitted).  Further, the "official policy" standard "refers to formal

rules or understandings – often but not always committed to writing – that are intended to, and do,

establish fixed plans of action to be followed under similar circumstances consistently and over

time." *Pembauer*, 475 U.S. at 480-81.  Thus, the actions of an officer who does not have explicit

policymaking authority may, nonetheless, constitute "official policy" if his decisions are accepted

as the binding and ordinary course of conduct by the authorized policymakers.  *See Praprotnik*,

485 U.S. at 127 ("If the authorized policymakers approve a subordinate's decision and the basis

for it, their ratification would be chargeable to the municipality because their decision is final").

Moreover, a county cannot be held liable for the acts of a district attorney related to

decisions to prosecute or not prosecute an individual because the district attorney represents the

state and not the county.  *See Martin v. County of Suffolk*, No. 13-CV-2104, 2014 WL 1232906,

*5 (E.D.N.Y. Mar. 26, 2014) (citations omitted); *see also Pinaud v. County of Suffolk*, 52 F.3d

1139, 1154 n.15 (2d Cir. 1995).  However, a county can be held liable based upon its "long

history of negligent disciplinary practices regarding law enforcement personnel, which gave rise

to the individual defendants' conduct in promoting the malicious prosecution of plaintiffs." *Myers

v. Cnty. of Orange*, 157 F.3d 66, 77 (2d Cir. 1998) (quotation omitted).

In the present matter, Plaintiff has failed to allege facts that establish municipal liability.

Many of Defendant Smith's actions were related to his decision whether to prosecute certain

individuals, and a county cannot be held liable for those decisions.  *See Martin*, 2014 WL

1232906, at *5. Moreover, Plaintiff merely makes conclusory allegations that Defendants Smith and McNally acted as policymakers for the County. Plaintiff alleges that Defendant Smith's actions "constituted an unlawful policy decision" and that Defendants Smith and McNally are "policy-making officials," but Plaintiff provides no specific allegations that Defendants Smith or McNally are responsible for making policy for the County. *See* Dkt. No. 1 ¶¶ 1185, 1194. Likewise, Plaintiff has not alleged that the County has a long history of negligent practices that gave rise to Plaintiff's prosecution or that Defendant Smith's actions were the binding and ordinary course of conduct of the County. The Court also notes that Defendant Smith was appointed as special prosecutor for the limited purpose of investigating and prosecuting the AB forgery case, and there are no allegations that Defendant Smith acted in a more substantial role with respect to the County. Accordingly, the County's motion to dismiss is granted in its entirety, and the County is dismissed as a Defendant in this action.

**F.      Motions for Sanctions**

Defendants John and Daniel Brown moved for sanctions against Plaintiff and his attorney pursuant to Federal Rule of Civil Procedure 11, *see* Dkt. No. 89, and Plaintiff cross-moved for sanctions against the Brown Defendants and their attorney, *see* Dkt. No. 90.

The central objective behind Rule 11 is the deterrence of "baseless filings in district courts." *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). "Drawing a line between zealous advocacy and frivolous conduct, Rule 11 provides a vehicle for sanctioning an attorney, a client, or both." *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 948 F.2d 1338, 1343 (2d Cir. 1991). Specifically, Rule 11 provides as follows:

> By presenting to the court a pleading, written motion, or other paper
> – whether by signing, filing, submitting or later advocating it – an

> attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). "[T]he standard for triggering the award of fees under Rule 11 is objective unreasonableness." *Margo v. Weiss*, 213 F.3d 55, 65 (2d Cir. 2000) (citing *Calloway v. Marvel Entertainment Group*, 854 F.2d 1452, 1469-70 (2d Cir. 1988)).

In analyzing a motion for sanctions pursuant to Rule 11, the district court is required to "avoid hindsight and resolve all doubts in favor of the signer." *See Carrasquillo v. City of Troy*, No. 1:02–CV–01231, 2006 WL 304031, *4 (N.D.N.Y. Feb. 8, 2006) (citing *Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir. 1986)). The imposition of sanctions upon a party is a discretionary decision for the district court, and must be exercised with caution. *See Cerrone v. Cahill*, No. 95-CV-241, 2001 WL 1217186, *16 (N.D.N.Y. Sept. 28, 2001) (citing *Knipe v. Skinner*, 19 F.3d 72, 78 (2d Cir. 1994)). Accordingly, Rule 11 is violated only when "it is patently clear that a claim has absolutely no chance of success." *Carrasquillo*, 2006 WL 304031, at *4 (internal citations omitted).

There are certain procedural rules a party must follow when making a motion for sanctions. "[A] party moving for Rule 11 sanctions must do so in a filing 'made separately from any other motion.'" *Lawrence v. Richman Grp. of CT LLC*, 620 F.3d 153, 156 (2d Cir. 2010); *see also* Fed. R. Civ. P. 11(c)(2). "Rule 11's safe harbor provision provides an opportunity to

withdraw or correct a challenged submission by requiring initial service of the motion, but delays filing or presentation of the motion to the court for 21 days; filing of the motion is permitted 21 days after service only if the challenged submission is not 'withdrawn or appropriately corrected.'" *In Re Pennie & Edmonds LLP*, 323 F.3d 86, 89 (2d Cir. 2003) (quotation omitted). The purpose of the safe harbor provision is to "permit sanctions to be imposed on a party who has violated Rule 11(b) only after that party is provided with notice of the pleading defect and afforded an opportunity to correct or withdraw the defective filing." *Lawrence*, 620 F.3d at 159.

Defendants John and Daniel Brown argue that sanctions against Plaintiff are appropriate because Plaintiff failed to realize that both Brown Defendants have absolute immunity from suit for testifying and for their meetings with the prosecutor before testifying. *See* Dkt. No. 89-1 at 6. As such, they claim that Plaintiff's complaint is frivolous. *See id.* at 10. They further argue that Plaintiff filed his complaint for the improper purpose of harassing Defendants and increasing their litigation costs. *See id.*

The Court finds that sanctions against Plaintiff and his counsel are inappropriate in this case. Although the Court did ultimately dismiss Plaintiff's claims against Defendants John and Daniel Brown in the Prior Decision, it cannot be said that Plaintiff's claims against them were frivolous. *See* Dkt. No. 114 at 39-43. As the Court noted in the Prior Decision, Plaintiff alleged that John Brown gave a sworn, written deposition wherein he fabricated incidents that occurred in Plaintiff's office and implicated Plaintiff in the forgery scheme. *See* Dkt. No. 1 ¶¶ 1057-58. The complaint also contains allegations that Defendant Smith met with John Brown before he issued this statement to ensure that it was consistent with the other Defendants' sworn testimony. *Id.* ¶ 1061. The Court concluded that, although this statement did not receive absolute immunity, Plaintiff had not sufficiently alleged that John Brown had an agreement with Defendant Smith to

maliciously prosecute Plaintiff. *See* Dkt. No. 114 at 41. The Court found that Plaintiff's

allegations against John Brown were conclusory and that John Brown's alleged link to the

malicious prosecution was more tenuous than certain other Defendants. Even though Plaintiff did

not sufficiently state a cause of action against John Brown, his claims were not frivolous.

Plaintiff sufficiently alleged that John Brown was not entitled to absolute immunity for his written

statement, and Plaintiff also alleged, albeit in a conclusory fashion, that John Brown played a role

in Plaintiff's malicious prosecution. As such, sanctions are not appropriate for Plaintiff's claims

against John Brown.

Plaintiff alleges that Defendant Daniel Brown likely possessed and filed certain forged

AABs, and then gave false testimony about them before a grand jury. *See* Dkt. No. 1 ¶¶ 1131-34.

Plaintiff argued that Daniel Brown was not entitled to absolute immunity because he was a

"complaining witness." *See* Dkt. No. 60 at 63-64. In the Prior Decision, the Court found that

Daniel Brown was not a "complaining witness" because he was not involved in the investigation

until after Plaintiff had been indicted, and, therefore, he is entitled to absolute immunity for his

testimony. *See* Dkt. No. 114 at 42. As such, the Court dismissed Plaintiff's claims against Daniel

Brown. In resolving all doubts in Plaintiff's favor, the Court finds that Plaintiff's claims against

Daniel Brown were not frivolous. Considering Plaintiff's numerous allegations that various

Defendants conspired to present false testimony that would implicate Plaintiff, coupled with

Plaintiff's claim that Daniel Brown likely filed forged AABs and then falsely testified about them,

the Court finds that Plaintiff's claims against Daniel Brown were not frivolous. To be sure,

Plaintiff has not sufficiently alleged that Daniel Brown was involved in the alleged conspiracy to

scapegoat prosecute Plaintiff. However, in resolving all doubts in favor of Plaintiff and in light of

Plaintiff's allegations that Daniel Brown was working with several Defendants who were involved

in the alleged malicious prosecution of Plaintiff, although it may be a close call, it cannot be said that Plaintiff's claims against Daniel Brown were frivolous. However, even if Plaintiff's claims against Daniel Brown can be considered frivolous, in its discretion, the Court declines to impose sanctions on Plaintiff or his attorney.

Plaintiff also cross-moved for sanctions against Defendants John and Daniel Brown, arguing that their motion for sanctions is frivolous and presented only to harass Plaintiff. *See* Dkt. No. 90 at 10. At the outset, there is no indication that their motion was presented to harass Plaintiff or increase Plaintiff's litigation costs. Moreover, in resolving all doubts in the Brown Defendants' favor, their motion for sanctions is not frivolous. In their motion, the Brown Defendants argue that Plaintiff's claims against them were frivolous. The Court dismissed Plaintiff's claims against both Brown Defendants in the Prior Decision. With respect to Daniel Brown, since his testimony is entitled to absolute immunity and Plaintiff did not sufficiently allege that he acted in conspiracy with the other Defendants, Plaintiff's claims against him, although not frivolous, were well short of the pleading requirements. As such, it was not unreasonable for Daniel Brown to argue that Plaintiff's claims against him were frivolous, especially since Daniel Brown's testimony was shielded by absolute immunity. With respect to John Brown, his testimony was also entitled to absolute immunity, and although he issued a written statement that is not shielded by immunity, Plaintiff failed to sufficiently allege that he was involved in the conspiracy to maliciously prosecute Plaintiff. Again, although the Court finds that Plaintiff's claims against John Brown were not frivolous, it was not objectively unreasonable for John Brown to argue that Plaintiff's claims against him were frivolous. As such, the Court will not impose sanctions on Defendants John and Daniel Brown or their attorney.

**IV. CONCLUSION**

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant Smith's motion to dismiss (Dkt. No. 96) is **GRANTED** in its entirety; and the Court further

**ORDERS** that Defendant Ogden's motion to dismiss (Dkt. No. 73) is **GRANTED** in part and **DENIED** in part as stated herein;[6] and the Court further

**ORDERS** that Defendant County of Rensselaer's motion to dismiss (Dkt. No. 97) is **GRANTED** in its entirety; and the Court further

**ORDERS** that Defendants Smith and the County of Rensselaer are terminated from this action; and the Court further

**ORDERS** that Defendants John and Daniel Brown's motion for sanctions (Dkt. No. 89) is **DENIED**; and the Court further

**ORDERS** that Plaintiff's cross-motion for sanctions (Dkt. No. 90) is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: December 30, 2016
        Albany, New York

Mae A. D'Agostino
U.S. District Judge

---

[6] Plaintiff's Section 1983 conspiracy to commit malicious prosecution claim against Defendant Ogden survives the instant motion. All other claims against Defendant Ogden are dismissed.

39