

MANDATE

**UNITED STATES COURT OF APPEALS**
**FOR THE**
**SECOND CIRCUIT**

_____

At a Stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 3rd day of August, two thousand and eighteen.

Before:     Dennis Jacobs,
            Reena Raggi,
            Christopher F. Droney,
                    *Circuit Judges.*

_____

Edward G. McDonough,

                    Plaintiff - Appellant,

v.

Youel Smith, individually and as Special District
Attoney for The County of Rensselaer, New York,
AKA Trey Smith,

                    Defendant - Appellee,

John J. Ogden, Richard McNally Jr., Kevin McGrath,
Alan Robillard, County of Rensselaer, John F. Brown,
William A. McInerney, Kevin F. O'Malley, Daniel B.
Brown, Anthony J. Renna,

                    Defendants.

_____

**JUDGMENT**
Docket No. 17-296

The appeal in the above captioned case from a judgment of the United States District Court for the Northern District of New York was argued on the district court's record and the parties' briefs.   Upon consideration thereof,

IT IS HEREBY ORDERED, ADJUDGED and DECREED that the judgment of the district court is AFFIRMED.

                    For the Court:
                    Catherine O'Hagan Wolfe,
                    Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

*Catherine O'Hagan Wolfe*

MANDATE ISSUED ON 09/19/2018

# In the
# United States Court of Appeals
## For the Second Circuit

_____

August Term, 2017
No. 17-296-cv

EDWARD G. MCDONOUGH,
*Plaintiff-Appellant,*

*v.*

YOUEL SMITH, INDIVIDUALLY AND AS SPECIAL DISTRICT ATTORNEY FOR
THE COUNTY OF RENSSELAER, NEW YORK, AKA TREY SMITH,
*Defendant-Appellee,*

JOHN J. OGDEN, RICHARD MCNALLY JR., KEVIN MCGRATH, ALAN
ROBILLARD, COUNTY OF RENSSELAER, JOHN F. BROWN, WILLIAM A.
MCINERNEY, KEVIN F. O'MALLEY, DANIEL B. BROWN, ANTHONY J.
RENNA,
*Defendants.*[*]

_____

Appeal from the United States District Court
for the Northern District of New York.
No. 15-cv-1505 — Mae A. D'Agostino, *Judge.*

_____

---

[*] The Clerk is directed to amend the caption to conform to the above.

ARGUED: NOVEMBER 29, 2017
DECIDED: AUGUST 3, 2018

_____

Before: JACOBS, RAGGI, and DRONEY, *Circuit Judges*.

_____

Interlocutory appeal from a judgment of the United States District Court for the Northern District of New York (D'Agostino, *J.*) dismissing the Plaintiff-Appellant's claims under 42 U.S.C. § 1983. The Plaintiff-Appellant alleged that his right to due process had been violated because fabricated evidence was used against him in state criminal proceedings. He also alleged a malicious prosecution claim against the prosecutor. We conclude that his due process claim was untimely as it was filed beyond the applicable limitations period. We also conclude that the prosecutor was entitled to absolute immunity for the malicious prosecution claim. We therefore **AFFIRM** the judgment of the district court.

_____

BRIAN D. PREMO, Premo Law Firm PLLC, Albany, NY, *for Plaintiff-Appellant*.

THOMAS J. O'CONNOR, Napierski, VanDenburgh, Napierski & O'Connor, LLP, Albany, NY, *for Defendant-Appellee Youel Smith*.

Andrew D. Bing, Deputy Solicitor General, Jennifer L. Clark, Assistant Solicitor General, *for* Barbara D.

2

1    Underwood, Attorney General of the
2    State of New York, *for Defendant John*
3    *G. Ogden.*
4
5  DRONEY, *Circuit Judge*:

6    Plaintiff-Appellant Edward G. McDonough, the former

7  Democratic Commissioner of the Rensselaer County Board of

8  Elections, was acquitted in New York state court of forging absentee

9  ballots in a local primary election. He appeals from two subsequent

10  decisions of the United States District Court for the Northern District

11  of New York (D'Agostino, *J.*) dismissing his claims against

12  Defendant-Appellee Youel Smith under 42 U.S.C. § 1983 related to

13  that prosecution. He alleged (1) denial of due process based on

14  fabricated evidence and (2) malicious prosecution. The district court

15  determined that (1) McDonough's due process claim was untimely

16  and dismissed it as to all Defendants[1] and (2) Smith, a Special District

---

[1] The Defendants are primarily individuals allegedly associated with either the purported fraudulent scheme that formed the basis for McDonough's prosecution or members of law enforcement responsible for his investigation and prosecution. McDonough has alleged conspiracies involving both types of defendants.

3

1    Attorney who prosecuted McDonough, was entitled to absolute

2    prosecutorial immunity on McDonough's malicious prosecution

3    claim and therefore dismissed that claim with respect to Smith.[2]

4    Pursuant to Federal Rule of Civil Procedure 54(b), the district

5    court entered judgment as to Smith and certified the decisions

6    dismissing the two claims against him for interlocutory appeal by

7    McDonough.[3]

8    For the reasons that follow, we agree with the district court's

9    conclusion that McDonough's due process claim was untimely, and

10    thus barred by the applicable statute of limitations. We also agree

---

[2] McDonough's claims against Smith were brought against him in his official and individual capacities. The district court dismissed the former on the basis of Eleventh Amendment immunity. That decision is not challenged in this appeal. Thus, it is only the individual capacity claims that we address.

[3] Defendant John J. Ogden, a New York State Police Trooper who worked with Smith as an investigator in the criminal case against McDonough, has filed a brief in this court arguing that the district court correctly concluded that McDonough's due process claim was time-barred. Although this Court previously granted Ogden's motion to intervene for the purpose of seeking a stay pending a reconsideration motion in the district court, the judgment entered by the district court under Federal Rule of Civil Procedure 54(b) and authorization for interlocutory appeal only applied to Defendant-Appellee Smith.

1   with the district court that Smith is entitled to absolute immunity as

2   to the malicious prosecution claim. We therefore **AFFIRM** the

3   dismissal of those claims.

## BACKGROUND

5       During the 2009 Working Families Party primary election in the

6   City of Troy, New York, several individuals associated with the

7   Democratic and Working Families Parties forged signatures and

8   provided false information on absentee ballot applications and

9   absentee ballots in order to affect the outcome of that primary. Those

10  individuals then submitted the forged absentee ballot applications to

11  McDonough. McDonough, as a commissioner of the Rensselaer

12  County elections board, was responsible for processing those

13  applications.[4] McDonough approved the forged applications, but

14  subsequently claimed he did not know that they had been falsified.

---

[4] McDonough, as the Democratic Rensselaer County Elections Commissioner, is responsible for ensuring that all qualified voters may exercise their right to vote. *See* Board of Elections, www.rensco.com/departments/board-of-elections/ (last visited Jun. 20, 2018). Part of the responsibilities of a Board of Elections, and by

1          The plot to influence the primary was eventually discovered.

2    Defendant Richard McNally, the elected District Attorney for

3    Rensselaer County, was disqualified from the ensuing investigation

4    because certain of those allegedly involved in the scheme had worked

5    on his prior campaign. The state court then appointed Smith as a

6    Special District Attorney to lead the investigation and potential

7    prosecution. McDonough claimed that Smith then engaged in an

8    elaborate scheme to frame McDonough for the crimes by, among

9    other things, fabricating evidence. This alleged scheme included

10   using forged affidavits, offering false testimony, and using faulty

11   DNA methods for analyzing materials used in processing the ballot

12   applications, all despite Smith knowing that McDonough was

13   innocent.

---

extension, a Commissioner, is to receive applications for absentee ballots and
determine whether the applicants are qualified to vote. N.Y. Elec. Law § 8-402(1).
McDonough, as an elections commissioner, was a full-time employee of
Rensselaer County.

1      McDonough claims that Smith presented the fabricated

2    evidence to a grand jury. The grand jury subsequently indicted

3    McDonough on more than three dozen state law counts of felony

4    forgery in the second degree and a similar number of counts of felony

5    criminal possession of a forged instrument in the second degree. *See*

6    N.Y. Penal Law §§ 170.10, 170.25. The case against McDonough

7    proceeded to trial but ended in a mistrial. McDonough was then

8    retried, again with Smith as the prosecutor. That trial ended in

9    McDonough's acquittal on December 21, 2012.

10      On December 18, 2015, McDonough filed this action under 42

11    U.S.C. § 1983, claiming that the Defendants (including Smith) (1) had

12    violated his right to due process by fabricating evidence and later

13    using it against him before the grand jury and in his two trials and (2)

14    were liable for malicious prosecution.

15      Several Defendants filed motions to dismiss McDonough's due

16    process claim. They argued, in part, that it was barred by the

7

1    applicable three-year statute of limitations because the allegedly

2    fabricated evidence had been disclosed to McDonough, and his claim

3    therefore accrued, well before the second jury acquitted him.[5]

4          In opposing the Defendants' motions, McDonough argued that

5    because his fabrication of evidence claim was based on the actions of

6    Smith, a prosecutor, it was analogous to a malicious prosecution

7    claim, and therefore did not accrue until the second trial terminated

8    in his favor. McDonough also contended that his due process claim

9    did not accrue until the termination of the second trial under the

10   Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994). He

11   argued that his fabrication of evidence claim would challenge the

12   validity of the pending criminal proceedings against him, and thus,

13   under *Heck*, did not accrue until he was acquitted.

---

[5] Although Smith filed a motion to dismiss McDonough's complaint, he did not argue that McDonough's due process claim was untimely. Nonetheless, the district court concluded, as other Defendants had raised untimeliness issues as to the fabrication of evidence claim, that the claim was also untimely as to Smith. Plaintiff does not challenge that Smith may assert the untimeliness of that claim in this appeal.

1        In two decisions, dated September 30, 2016 and December 30,

2    2016, the district court dismissed McDonough's due process claims

3    against all Defendants as untimely and his malicious prosecution

4    claim against Smith on the basis of absolute prosecutorial immunity.[6]

5        As to the due process claim, the district court reasoned that

6    McDonough's claim was "based upon the fabrication of evidence" and

7    it "accrued when he knew or should have known that such evidence

8    was being used against him and not upon his acquittal in his criminal

9    case." J. App. 155. As the district court indicated, McDonough's

10    complaint had alleged "that all of the fabricated evidence was either

11    presented at grand jury proceedings or during his two trials, all of

12    which occurred" more than three years before he filed suit. J. App.

13    156.

---

[6] The district court also determined that McDonough's malicious prosecution claim was timely because it had not accrued until his acquittal. That claim is still proceeding in the district court as to other Defendants.

9

1      The district court also concluded that Smith was protected by

2  absolute immunity as to the malicious prosecution claim.

3                    **DISCUSSION**

4  **I.**    **Standard of Review**

5      "We review *de novo* the grant of a motion to dismiss, accepting

6  all factual allegations in the complaint as true and drawing inferences

7  from those allegations in the light most favorable to the plaintiff."

8  *Bascunan v. Elsaca*, 874 F.3d 806, 810 (2d Cir. 2017) (alterations and

9  internal quotation marks omitted); *see also Deutsche Bank Nat'l Tr. Co.*

10  *v. Quicken Loans Inc.*, 810 F.3d 861, 865 (2d Cir. 2015) ("We review *de*

11  *novo* a district court's grant of a motion to dismiss, including its legal

12  interpretation and application of a statute of limitations . . . .").

13  **II.**    **The Due Process Claim**

14      McDonough argues that his due process claim is timely because

15  he alleged that Smith fabricated evidence in order to file baseless

16  charges against him, and thus his claim is most analogous to a

1    malicious prosecution action, which does not accrue until favorable

2    termination of the prosecution, here the verdict of acquittal. *See*

3    *Poventud v. City of New York*, 750 F.3d 121, 131 (2d Cir. 2014). In the

4    alternative, McDonough asserts (1) that his claim is timely in light of

5    *Heck v. Humphrey*, and (2) that the use of fabricated evidence against

6    him constituted a continuing violation that renders his claim timely.

7          We conclude that the nature of McDonough's due process claim

8    is different from a malicious prosecution claim, and that it accrued

9    when (1) McDonough learned that the evidence was false and was

10   used against him during the criminal proceedings; and (2) he suffered

11   a loss of liberty as a result of that evidence.  Because both occurred

12   more than three years prior to McDonough filing this action, we agree

13   with the district court that McDonough's due process claim is time-

1    barred.[7] We also reject McDonough's additional arguments as to the

2    due process claim.

3        **a.  The Accrual of § 1983 Actions for Fabrication of Evidence**
4            **and Malicious Prosecution**

5

6        The statute of limitation for claims brought under 42 U.S.C.

7    § 1983 is generally "the statute of limitations for the analogous claim

8    under the law of the state where the cause of action accrued." *Spak v.*

9    *Phillips*, 857 F.3d 458, 462 (2d Cir. 2017). It is undisputed that the

10   applicable statute here is New York's three-year limitations period for

11   personal injury claims. *See Smith v. Campbell*, 782 F.3d 93, 100 (2d Cir.

12   2015) (applying three-year personal injury limitations period to

13   retaliatory prosecution claim); *see also* N.Y. C.P.L.R. § 214(5) (personal

14   injury statute of limitations).

15       "However, the time at which a claim . . . under [§] 1983 accrues

16   is a question of federal law that is *not* resolved by reference to state

---

[7] At times, McDonough characterizes the fabrication of evidence claim against Smith as a conspiracy to fabricate evidence with other Defendants. That does not affect our conclusion as to the accrual of that claim.

1    law." *Spak*, 857 F.3d at 462 (quoting *Wallace v. Kato*, 549 U.S. 384, 388

2    (2007)) (emphasis in original). Instead, federal "courts apply general

3    common-law tort principles to determine the accrual date of a [§] 1983

4    claim." *Spak*, 857 F.3d at 462 (alterations and internal quotation marks

5    omitted). It "is the standard rule that accrual occurs when a plaintiff

6    has a complete and present cause of action, that is, when the plaintiff

7    can file suit and obtain relief." *Smith*, 782 F.3d at 100 (internal

8    quotation marks omitted). Put other ways, an action accrues "when

9    the wrongful act or omission results in damages," *id.*, and "once the

10   plaintiff knows or has reason to know of the injury which is the basis

11   of his action," *Veal v. Geraci*, 23 F.3d 722, 724 (2d Cir. 1994) (internal

12   quotation marks omitted).

13       We next consider the accrual rules for the two types of claims

14   that McDonough has brought against Smith in this case: fabrication

15   of evidence and malicious prosecution.

16       Under the Fifth and Fourteenth Amendments' Due Process

13

1    Clauses, individuals have "the right not to be deprived of liberty as a

2    result of the fabrication of evidence by a government officer . . . ."

3    *Zahrey v. Coffey*, 221 F.3d 342, 349 (2d Cir. 2000). The forwarding by

4    an investigating officer to a prosecutor of fabricated evidence, or in

5    this instance, the alleged creation or use of such evidence by both

6    investigating officers and the prosecutor, "works an unacceptable

7    'corruption of the truth-seeking function of the trial process.'" *Ricciuti*

8    *v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997) (quoting *United*

9    *States v. Agurs*, 427 U.S. 97, 104 (1976)).

10       Applying our standard accrual rules, a fabrication of evidence

11   claim accrues (1) when a plaintiff learns of the fabrication and it is

12   used against him, *see Veal*, 23 F.3d at 724, and (2) his liberty has been

13   deprived in some way, *see Zahrey*, 221 F.3d at 348. Because there is no

14   dispute in this case that McDonough suffered a liberty deprivation

15   because of that evidence when he was arrested and stood trial, we

16   focus our attention on the first prong. *See id.*

14

1    The statute of limitations begins to run on a fabrication of

2    evidence claim against law enforcement officials under § 1983 when

3    the plaintiff has "'reason to know of the injury which is the basis of his

4    action.'" *Veal*, 23 F.3d at 724 (quoting *Singleton v. New York*, 632 F.2d

5    185, 191 (2d Cir. 1980)). "The reference to 'know[ledge] of the injury'

6    does not suggest that the statute does not begin to run until the

7    claimant has received judicial verification that the defendants' acts

8    were wrongful." *Id.* (second alteration in original).

9    In *Veal*, a police detective manipulated a lineup by arranging

10   for the witness to view the criminal defendant (later the plaintiff in

11   the § 1983 fabrication of evidence lawsuit) entering the police station

12   in handcuffs prior to conducting the lineup. *Id.* at 723–24. However,

13   at the time of the lineup, the defendant had already been arrested for

14   the crime based on the same witness's identification of him from a

15   prior photo array. *Id.* at 725. The evidence of the identification from

16   the lineup was later used at trial and the defendant was convicted. *Id.*

15

1   at 724. The Appellate Division of the New York Supreme Court

2   reversed the conviction because of the use of the suggestive lineup

3   and the resulting in-court identification. *Id.*

4        Veal brought his § 1983 due process claim within three years of

5   the decision by the Appellate Division but more than three years after

6   he had been sentenced following his trial. *Id.* We concluded that the

7   statute of limitations had expired before the suit was instituted

8   because Veal was made aware of the tainted lineup when its

9   circumstances were disclosed before his trial (and he moved to

10  suppress its use at trial), more than three years before suit was

11  brought. *Id.* at 724–25. The date of the reversal of the conviction by the

12  Appellate Division was not the accrual date of the due process

13  violation;  rather it was as early as when the circumstances of the

14  lineup were disclosed at the pretrial hearing, and certainly no later

15  than the date of conviction and sentencing, because those later dates

16  were when the liberty deprivation occurred based on the effect of the

1    tainted evidence at trial. *Id.* at 725–26.[8]

2         We acknowledge that the Third, Ninth, and Tenth Circuits have

3    held that the due process fabrication cause of action accrues only after

4    criminal proceedings have terminated because those circuits have

5    concluded that fabrication of evidence claims are analogous to claims

6    of malicious prosecution, which require termination of the criminal

7    proceeding in the defendant's favor before suit may be brought. *See*

8    *Floyd v. Attorney Gen. of Pennsylvania*, 722 F. App'x. 112, 114 (3d Cir.

9    Jan. 8, 2018); *Bradford v. Scherschligt*, 803 F.3d 382, 388–89 (9th Cir.

10   2015) ("To determine the proper date of accrual, we look to the

11   common law tort most analogous to Bradford's claim. As we have

12   explained, the right at issue. . . is the right to be free from [criminal]

13   charges based on a claim of deliberately fabricated evidence. In this

14   regard, it is like the tort of malicious prosecution, which involves the

---

[8] District courts in this Circuit have followed *Veal* and concluded that a § 1983 claim based on fabricated evidence "accrues when the plaintiff learns or should have learned that the evidence was fabricated and such conduct causes the claimant some injury." *Mitchell v. Home*, 377 F. Supp. 2d 361, 373 (S.D.N.Y. 2005)

1    right to be free from the use of legal process that is motivated by

2    malice and unsupported by probable cause.") (second alteration in

3    original) (internal citation and quotation marks omitted); *Mondragon*

4    *v. Thompson*, 519 F.3d 1078, 1083 (10th Cir. 2008) ("After the institution

5    of legal process, any remaining constitutional claim is analogous to a

6    malicious prosecution claim. . . . Because the statute of limitations

7    does not start running before the elements of a claim are satisfied, the

8    statute of limitations for this due process claim cannot start until the

9    plaintiff has achieved a favorable result in the original action."). We

10   disagree with those decisions. Because the injury for this

11   constitutional violation occurs at the time the evidence is used against

12   the defendant to deprive him of his liberty, whether it be at the time

13   he is arrested, faces trial, or is convicted, it is when he becomes aware

14   of that tainted evidence and its improper use that the harm is

15   complete and the cause of action accrues. Indeed, the harm—and the

16   due process violation—is in the *use* of the fabricated evidence to cause

1    a liberty deprivation, not in the eventual resolution of the criminal

2    proceeding.

3         We thus conclude that, under the circumstances here, the

4    § 1983 action based on fabrication of evidence accrued when

5    McDonough (1) learned of the fabrication of the evidence and its use

6    against him in criminal proceedings, and (2) was deprived of a liberty

7    interest by his arrest and trial. For McDonough, this was, at the

8    earliest, when he was indicted and arrested and, at the latest, by the

9    end of his first trial, after all of the prosecution's evidence had been

10   presented.[9] "[J]udicial verification that the defendants' acts were

11   wrongful" is not required, and thus accrual did not have to await

12   McDonough's acquittal. *Veal*, 23 F.3d at 724.

13        In contrast, we have long held that malicious prosecution

14   claims brought pursuant to § 1983 do not accrue until the underlying

15   criminal proceedings against the plaintiff terminate in his favor.

---

[9] McDonough does not allege that fabricated evidence was used against him in the second trial that was not presented in the first.

19

1    *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010).

2    Favorable termination is an element of malicious prosecution under

3    New York law and also for the Constitution-based tort. *Id.* A plaintiff

4    therefore cannot have a complete cause of action unless and until the

5    criminal proceedings against him terminate favorably.[10] Accordingly,

6    the district court properly concluded that the malicious prosecution

7    claims were timely.[11]

8         That McDonough alleged that a prosecutor, rather than a law

9    enforcement officer, fabricated evidence does not delay the accrual of

10   his due process claim until accrual of his malicious prosecution claim.

11   The constitutional right violated by fabricated evidence is the right

12   not to be arrested or to face trial based on such evidence. *See Zahrey*,

---

[10] The elements of a malicious prosecution claim require a plaintiff to establish that "(1) the defendant initiated a prosecution against [the] plaintiff, (2) without probable cause to believe the proceeding can succeed, (3) the proceeding was begun with malice and, (4) the matter terminated in plaintiff's favor." *Ricciuti*, 124 F.3d at 130. The elements are the same for the New York tort and the constitutional one. *See id.*; *Colon v. City of New York*, 60. N.Y.2d 78, 82 (1983).

[11] The district court, however, concluded that Smith was entitled to absolute immunity from the malicious prosecution claim. That decision is addressed later in this opinion.

1    221 F.3d at 348. That violation and its harm were complete when the

2    fabricated evidence was used by Smith against McDonough in those

3    ways. It matters not, in the circumstances here, whether it was Smith

4    or a law enforcement officer who created and used the allegedly false

5    evidence; whoever causes that deprivation of liberty is a proper

6    defendant for this constitutional cause of action. But the defendant's

7    role makes no difference when the claim accrues. The separate and

8    distinct harm that malicious prosecution claims are designed to

9    address afforded McDonough a remedy to the extent that he alleged

10   that fabricated evidence was created to prosecute him maliciously

11   and without probable cause.[12] *See id.* (discussing claim based on

12   prosecutor's fabrication of evidence).

13        McDonough argues that, notwithstanding its date of accrual,

14   his due process claim is timely as a result of the Supreme Court's

---

[12] As one district court in this Circuit aptly explained: "A right to a fair trial claim is *distinct* from a malicious prosecution claim." *Bailey v. City of New York*, 79 F. Supp. 3d 424, 446 (E.D.N.Y. 2015) (emphasis added).

1    decision in *Heck*, 512 U.S. at 486–87 (concluding that civil complaint

2    must be dismissed in a malicious prosecution-type case if a judgment

3    in favor of the plaintiff would "imply the invalidity of his

4    conviction"). That argument, however, is foreclosed by the Supreme

5    Court's subsequent decision in *Wallace*, 549 U.S. at 393–94. In *Wallace*,

6    the plaintiff brought a false arrest claim under § 1983. The conviction

7    following that arrest was reversed by the state appeals court because

8    the arrest was without probable cause, thus invalidating a subsequent

9    confession admitted at trial. *Id.* at 386–87. The Supreme Court held

10    that the civil false arrest claim accrued at the time of the initial arrest

11    and the ultimate reversal of the conviction was not necessary to

12    complete the false arrest constitutional tort. *Id.* at 394. Even though

13    the false arrest claim might impugn a *future* conviction, *Heck* did not

14    delay its accrual date, and the civil action could proceed even though

1    the criminal case had not been resolved at that time.[13] *Id.* at 393. Thus,

2    the Court clarified that, "the *Heck* rule for deferred accrual is called

3    into play only when there exists a conviction or sentence that has *not*

4    been invalidated, that is to say, an outstanding criminal judgment."

5    *Wallace*, 549 U.S. at 393 (internal punctuation and quotation marks

6    omitted) (emphasis in original). McDonough was never convicted, so

7    *Heck* is not "called into play." *Id.*

8          Finally, McDonough argues that his due process claim is timely

9    because his "wrongful prosecution [constituted] a continuing

10   violation," that only ceased on his acquittal. Appellant's Br. 50.   We

11   are not persuaded. As we have explained: "Characterizing

12   defendants' separate wrongful acts as having been committed in

13   furtherance of a conspiracy or as a single series of interlocking events

14   does not postpone accrual of claims based on individual wrongful

---

[13] The Supreme Court in *Wallace* stated that there may be circumstances where the district court might exercise its discretion to stay the civil action until the criminal case is resolved, but that is not relevant here. *Wallace*, 594 U.S. at 393–94.

23

1    acts." *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1156 (2d Cir. 1995)

2    (internal quotation marks omitted). Smith allegedly fabricated

3    evidence, then presented that evidence to a grand jury, and later used

4    it at McDonough's trials. The cause of action accrued when

5    McDonough became aware of the fabricated evidence, which was, at

6    the latest, during the first trial. The continuation of the prosecution

7    does not, by itself, constitute a continuing violation that would

8    postpone the running of the statute of limitations until his acquittal.[14]

9    **III.    The Malicious Prosecution Claim**

10           Prosecutors are protected by absolute immunity for their acts

11    that are "intimately associated with the judicial phase of the criminal

---

[14] We are also not persuaded by McDonough's reliance on the Supreme Court's recent decision in *Manuel v. City of Joliet, Ill.*, which held that a plaintiff (formerly a criminal defendant) may seek damages under 42 U.S.C. § 1983 concerning his pretrial detention on the ground that it violated the Fourth Amendment for the period of pretrial detention after his arrest. 137 S. Ct. 911, 914 (2017). That a claim under the Fourth Amendment may be based on events occurring after an arrest does not affect our conclusion that McDonough's due process claim accrued well before his acquittal, and the Supreme Court stated in *Manuel* that its recognition that the Fourth Amendment applies to a period after the arrest did not necessarily alter the accrual date of that and other causes of action, and left the question for the Courts of Appeals to resolve. *Id.* at 922.

1    process" and their role as advocates, but they receive only qualified

2    immunity for acts that are investigatory in nature. *Simon v. City of New*

3    *York*, 727 F.3d 167, 171–72 (2d Cir. 2013) (internal quotation marks

4    omitted). The district court concluded that Smith was entitled to

5    absolute immunity from McDonough's malicious prosecution claim

6    because even though McDonough's complaint suggests that, at times,

7    Smith was acting in an investigatory capacity, "the distinction

8    between a prosecutor's investigative and prosecutorial functions is

9    immaterial to a malicious prosecution claim, since prosecutors are

10   generally immune from such claims." J. App. 204; *see also Shmueli v.*

11   *New York*, 424 F.3d 231, 238 (2d Cir. 2005). We agree. Although

12   prosecutors may be eligible only for qualified immunity when

13   functioning in an investigative capacity, they are entitled to absolute

14   immunity when acting as advocates for the state, such as initiating

15   prosecutions or at trial. *See Zahrey*, 221 F.3d at 346 (holding, in § 1983

16   cases, that prosecutorial "[a]ctions taken as an advocate enjoy

25

1    absolute immunity, while actions taken as an investigator enjoy only

2    qualified immunity" (internal citation omitted)); *see also Shmueli*, 424

3    F.3d at 237 ("[T]he initiation and pursuit of a criminal prosecution are

4    quintessential prosecutorial functions . . . ."). As the malicious

5    prosecution claim relates only to Smith's prosecutorial function, it is

6    barred by absolute immunity.[15]

7

---

[15] McDonough also asserts on appeal that Smith's appointment as Special District Attorney was invalid under New York law and that the conduct McDonough was charged with in the indictment could not meet the elements of the various state criminal statutes. In order to strip Smith of his absolute prosecutorial immunity, McDonough would be required to show Smith proceeded despite a "clear absence of all jurisdiction" for the prosecution. *Barr v. Abrams*, 810 F.2d 358, 361 (2d Cir. 1987). He has not done so. Also, as to the claim that Smith was not properly appointed, the correct forum for such a claim would be in the New York courts. In *Working Families Party v. Fisher*, 23 N.Y.3d 539 (2014), the New York Court of Appeals held that the method for challenging the appointment of a special prosecutor is through a N.Y. C.P.L.R. Article 78 proceeding. McDonough did not pursue the Article 78 course to invalidate Smith's appointment. Rather, McDonough alleged in his complaint that he sought to have Smith disqualified by petitioning the County to file an action in the state courts to nullify Smith's appointment, and later filing a motion in his criminal case to dismiss the charges on the basis that Smith's appointment was unlawful. That motion was denied. As to the claim concerning the New York criminal statutes, the appropriate forum for challenging the application of the state criminal statutes to McDonough's alleged conduct was in McDonough's two state criminal trials, not during this subsequent civil action under § 1983. To the extent he argues that this should support his malicious prosecution claim, the argument does not affect Smith's absolute

1                                    **CONCLUSION**

2          McDonough's due process claim accrued when (1) the

3    purportedly fabricated evidence was used against him and he had

4    knowledge of that use, and (2) he was deprived of a liberty interest.

5    Because that occurred more than three years before he filed suit, we

6    **AFFIRM** the decision of the district court dismissing that claim. We

7    also **AFFIRM** the decision of the district court that Smith was entitled

8    to absolute immunity for the malicious prosecution claim.

---

immunity for his prosecutorial conduct, as it is the heartland of such a protection. *See Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976) (holding that absolute immunity protects prosecutors for their conduct "intimately associated with the judicial phase of the criminal process . . . .").